UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LAUREN BERTRAM, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD, CHIROSTPHER BERTRAM, JULIAN BERTRAM AND ALEXANDER BERTRAM**     **Plaintiffs** | : | **CIVIL ACTION NO. 2:19-CV-1478** |
| VS. | : | JUDGE CAIN |
| **PROGRESSIVE SOUTHEASTERN INSURANCE COMPANY, EMPIRE NATIONAL, INC., RIVERSIDE TRANSPORT, INC. AND JUSTIN ANTHONY CHONG**     **Defendants** | : | **MAGISTRATE JUDGE KAY** |

## THIRD AMENDED COMPLAINT

NOW COME (1) LAUREN BERTRAM, a person of the full age of majority of Calcasieu Parish, Louisiana, individually and on behalf of her Minor Child, CHRISTOPHER BERTRAM, (2) JULIAN BERTRAM and (3) ALEXANDER BERTRAM, persons of the full age of majority of Calcasieu Parish, Louisiana, with respect represents that:

### A. PARTIES

Made defendants herein are:

1.  Defendant **PROGRESSIVE SOUTHEASTERN INSURANCE COMPANY** (hereinafter referred to as "Progressive Southeastern") is a foreign insurance company not authorized to do business in Louisiana, which may be served through its attorney of record, Ian A. Macdonald, Jones Walker, LLP, 600 Jefferson Street, Suite 1600, Lafayette, LA 70501;

2.  Defendant **EMPIRE NATIONAL, INC.** (hereinafter referred to as "Empire National") is

1

an interstate common carrier based in the State of North Carolina and is registered with the U.S. Department of Transportation as a motor carrier bearing number 966111. It is a foreign company with its principal place of business in Henderson County, North Carolina, which may be served through its attorney of record, Ian A. Macdonald, Jones Walker, LLP, 600 Jefferson Street, Suite 1600, Lafayette, LA 70501;

3.   Defendant **JUSTIN ANTHONY CHONG** (hereinafter referred to as "Chong") is a person of the full age of majority and believed to be a resident of Orlando, Orange County, Florida, whose last known address is 1316 Pinar Drive, Orlando, FL 32825-7823.

4.   Defendant **CONVERMAT CORPORATION** (hereinafter referred to as "Convermat"), is a New York corporation with a principal place of business of 111 Great Neck Road, Great Neck, New York. It is a citizen of the state of New York.

5.   Defendant **BLUE GRACE GROUP, LLC** (hereinafter referred to as "Blue Grace") is an interstate common carrier and broker based in the State of Florida. It is registered with the U.S. Department of Transportation as a motor carrier bearing number 662979. It is a foreign corporation with a principal place of business of 2846 S. Falkenburg Road, Riverview, FL 33578. It is a citizen of the state of Florida.

6.   Defendant **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** (hereinafter referred to as "Mallory Alexander") is freight forwarder based in the State of Tennessee but doing business in the State of Texas. It is registered with the U.S. Department of Transportation as a motor carrier bearing number 840307 and a freight forwarder bearing number 011800. It is foreign corporation with a principal place of business of 4294 Swinnea Road, Memphis, TN. It is a citizen of the state of Tennessee.

## B. JURISDICTION

7. The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiffs and all Defendants are citizens of different U.S. states and thus complete diversity exists, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

8. At all times material to the crash at issue, defendants **CONVERMAT, BLUE GRACE GROUP, LLC**, and **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** knew any motor carrier responsible for transporting goods from Laredo, Texas to Hickory, North Carolina, a thirteen hundred mile trip, would use the quickest route. It cannot be reasonably disputed that the quickest route from Laredo, Texas to Hickory, North Carolina required transportation through Louisiana via Interstate 10. As such, defendants **CONVERMAT, BLUE GRACE GROUP, LLC**, and **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** purposefully targeted Louisiana as a state through which a motor carrier would transport the load. Because these defendants were at all times regularly engaged in the transportation of goods in interstate commerce it was foreseeable that truck crash litigation in Louisiana might occur when brokering a load that would be hauled across a significant portion of the state.

## C. VENUE

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to this claim occurred in this district. A tractor trailer owned, operated, possessed, supervised, managed and/or controlled by Defendants Chong, Empire National, Blue Grace, Mallory Alexander, and Convermat, was involved in a motor vehicle crash with Stephen Duane Bertram that occurred on Interstate Highway 10 westbound ("I-10 West") approximately four (4) miles west of Vinton in Calcasieu Parish, Louisiana.

## D. OVERVIEW

10.     Defendant **CONVERMAT** markets itself as the leading global supplier of parent rolls of tissue and, as such, does business in more than 80 countries worldwide. It further markets itself as possessing unparalleled market intelligence and a strong network of strategic alliances, resources, and insider knowledge that it uses to achieve higher profits for itself and its customers. In the context of this action, **CONVERMAT** acted as the shipper or consignor of a load of paper rolls (the "Load") that originated at the Kimerly-Clark *de Mexico* manufacturing facility and were destined for delivery to the Von Drehl Corporation in Hickory, North Carolina. To facilitate the transport of this load of paper rolls **CONVERMAT** hired or contracted with **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** to provide freight forwarding and brokerage services.

11.     Defendant **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** is a full-service logistics provider that provided freight forwarding and trucking brokerage services to defendant **CONVERMAT** to ensure the load of paper rolls at issue were timely delivered to the Von Drehl Corporation in Hickory, North Carolina. **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** received a full truck load of paper rolls from the Kimerly-Clark *de Mexico* manufacturing facility at its facility in Laredo, Texas where the paper rolls were off loaded for shipment to various locations throughout the United States, including the Von Drehl Corporation in Hickory, North Carolina. **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** employees were solely responsible for loading the paper rolls at issue into the trailer owned and operated by defendant **EMPIRE NATIONAL, INC.** At all times mentioned herein, **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** was acting in its capacity as the agent of **CONVERMAT.**

12.     Defendant **BLUE GRACE GROUP, LLC** was a Third Party Logistics Provider which acted as a *broker* that, for compensation, arranged the transportation of property by an authorized motor carrier.  On information and belief, **BLUE GRACE GROUP, LLC** was hired by **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.,** as agent for **CONVERMAT,** to select a competent motor carrier to transport the Less than Truckload of paper rolls from the **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** facility in Laredo, Texas to the Von Drehl Corporation in Hickory, North Carolina.  **BLUE GRACE GROUP, LLC** selected **EMPIRE NATIONAL, INC.** as the motor carrier to transport the paper rolls.

13.     **EMPIRE NATIONAL, INC.** is a for-hire motor carrier engaged in the transportation of goods for compensation.  At all times relevant to this action, **EMPIRE NATIONAL, INC.** employed defendant **JUSTIN ANTHONY CHONG** as a professional driver.

14.     **JUSTIN ANTHONY CHONG** acted in the course and scope of his employment with **EMPIRE NATIONAL, INC.** to professionally operate a commercial motor vehicle, namely a tractor-trailer, from Laredo, Texas to Hickory, North Carolina.

### E. THE INCIDENT

15.     On information and belief, on July 9, 2019 a Bill of Lading was created by **BLUE GRACE GROUP, LLC** with instructions for an undetermined motor carrier to deliver the load of paper rolls to Hickory, North Carolina.  Originally the section of the Bill of Lading containing the carrier name was left blank.  Later, an unidentified individual handwrote "Empire National" (now known to be defendant **EMPIRE NATIONAL, INC.)** in the section designating the for-hire motor carrier responsible for transporting the load.  As a Third Party Logistics provider, **BLUE GRACE GROUP, LLC** had a duty to properly screen the motor carrier and investigate the carrier's safety

record.  At a minimum, this duty required **BLUE GRACE GROUP, LLC** to check the general safety statistics and evaluations of the motor carrier and review any internal records of the motor carrier's safety performance.  Even a cursory review of publicly available information regarding **EMPIRE NATIONAL, INC.** would have caused a reasonably prudent broker to reject **EMPIRE NATIONAL, INC.** as a motor carrier or, at a minimum, inquire further.  A reasonably prudent broker would have discovered that **EMPIRE NATIONAL, INC.** had Out of Service Rates that far exceeded the national average in the Unsafe Driving, Hours-of-Service Compliance, Vehicle Maintenance and Driver Fitness categories.  As a motor carrier, **EMPIRE NATIONAL, INC.** drivers had been recently cited for several serious violations, including operating a commercial motor vehicle without a license, failure to obey traffic control devices, lane restriction, and failing to use a seatbelt while operating a commercial motor vehicle.  The safety record of **EMPIRE NATIONAL, INC.** required the **BLUE GRACE GROUP, LLC** to investigate the use of the motor carrier to ensure the carrier was capable of operating safely.

16.     Had the **BLUE GRACE GROUP, LLC** further investigated **EMPIRE NATIONAL, INC.** it would have uncovered a company that was wholly unfit to safely operate commercial motor vehicles.  For instance, **EMPIRE NATIONAL, INC.** employed **JUSTIN ANTHONY CHONG** despite a history of driving under the influence, speeding, improper equipment, failure to observe traffic control devices which are some of the very violations that are referenced in publicly available information at the time **BLUE GRACE GROUP, LLC** selected **EMPIRE NATIONAL, INC.**

17.     On or about July 16, 2019 **JUSTIN ANTHONY CHONG,** acting at all times as an employee of **EMPIRE NATIONAL, INC.,** arrived at the **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** facility in Laredo, Texas.  On arrival, **JUSTIN**

**ANTHONY CHONG** was operating a 2013 Freightline Cascadia 125 tractor, bearing North Carolina license plate number MX4349. The tractor was attached to and towing a 2017 Great Dane trailer bearing Oklahoma license plate number 3689LD.  Inside the vehicle were **JUSTIN ANTHONY CHONG** and his two minor children.  There were no operable seatbelts in the tractor.

18.  When **CHONG** arrived at the **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** facility the 2017 Great Dane trailer bearing Oklahoma license plate number 3689LD he was pulling was not fit for transporting cargo in interstate commerce.  The trailer had been involved in a crash in December, 2018 and was deemed a total loss.  **EMPIRE NATIONAL, INC.** performed the bare minimum repairs and placed the trailer back in service.  **EMPIRE NATIONAL, INC.** did not repair the left and right lower rail of the trailer which had significant damage.  The left lower rail of the trailer above the axle had a five inch crack which resulted in noticeable sagging.  This defect constituted an Out of Service violation that was noticeable and detectable by a reasonably prudent loader.  Were **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** operating within industry standards and best practices, it would have also recognized that the 2017 Great Dane trailer bearing Oklahoma license plate number 3689LD was not fit for use.

19. On or about July 16, 2019 despite an obvious Out of Service violation on the trailer, **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** nonetheless improperly loaded the trailer with nine paper rolls that individually weighed 1,805 pounds and collectively weighed 16,245 pounds. This cargo was Less Than a Truckload. **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** knew that the Federal Motor Carrier Safety Regulations prescribed how to properly load a Less than Truckload of paper rolls.  Specifically, 49 C.F.R. §393.122 required the paper rolls to be placed tightly against the walls of the vehicle or other paper

7

rolls to prevent forward, lateral and/or rearward movement during transit. The regulation further required **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** to use blocking, bracing, tiedowns or friction mats and the paper rolls were required to be banded together.

20. The post-crash Level I investigation by a Lousiana State Senior Trooper revealed that "none" of the minimum requirements contained in the federal motor carrier safety regulations, much less the more stringent industry standards and best practices, were utilized.

21. In addition to not using any of the accepted loading techniques, **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** sealed the trailer using a FlexSecure F35 Cable Seal manufactured by TydenBrooks Security Products Group. This product is a 1/8" anodized aluminum bodied cable security seal rated for High Security loads. On information and belief, **MALLORY ALEXANDER INTERNATIONAL LOGISTICS, INC.** utilized a "high security seal" not because bulk paper rolls constitute sensitive cargo requiring high security, but to ensure the manner in which the paper rolls were loaded could not be discovered until delivery.

22. On or about July 16, 2019, at approximately 6:30 p.m., Stephen Duane Bertram was the operator of a certain motor vehicle, namely a 2011 Chevrolet Traverse bearing Louisiana license plate number YBE715, which was lawfully and properly traveling in the right lane of Interstate Highway 10 westbound ("I-10 West") approximately four (4) miles west of Vinton in Calcasieu Parish, Louisiana.

23. At the aforesaid time and place, **JUSTIN ANTHONY CHONG** was driving a 2013 Freightline Cascadia 125 tractor, bearing North Carolina license plate number MX4349 in the course and scope of his employment with **EMPIRE NATIONAL, INC.** The tractor was attached to and towing a 2017 Great Dane trailer bearing Oklahoma license plate number 3689LD which was improperly loaded with approximately 16,245 pounds of improperly loaded jumbo paper

rolls/product.

24. At approximately 6:27 p.m., **CHONG** was eastbound on Interstate 10 near mile marker 3.8 when the front left steer tire of his tractor blew out. According to **CHONG'S** written statement he was unable to maintain control of the tractor despite doing his "best to keep truck on road." [SIC]. He fought to stay in his lane of travel for over 106 feet before he crossed the solid yellow no passing line and paved north shoulder of I-10 eastbound. He then left the shoulder and travelled through the grassy median north of I-10 Eastbound. He traveled in the grassy median for approximately 300 feet and 4 inches without regaining control of his tractor.

25. **CHONG** continued in a northeasterly direction onto the paved roadway of I-10 westbound into the westbound travel lanes and oncoming traffic.

26. **CHONG'S** tractor trailer first glanced off of a 2009 Chevrolet Silverado driven by Zachary N. Flessner. After the glancing blow to Flessner's vehicle, **CHONG's** tractor struck the 2011 Chevrolet Traverse vehicle driven by Stephen Duane Bertram, both of which were traveling in the westbound lanes of I-10 with the Bertram vehicle in the middle or number two travel lane.

27. Despite Mr. Bertram performing evasive maneuvers, **CHONG'S** tractor trailer collided with his vehicle in the north shoulder of I-10 westbound essentially head on at the front driver's side causing severe damage to the vehicle resulting in Mr. Bertram being fully ejected from the vehicle while still belted in the driver's side seat. He sustained catastrophic injuries that resulted in his death at the scene.

28. Defendant Chong was charged by the Louisiana State Police with careless operation of a motor vehicle (La. R.S. § 32:58).

29. As a result of the aforesaid collision, Stephen Duane Bertram suffered catastrophic injuries resulting in his death. The Plaintiffs, his surviving spouse and children, sustained damages that are

more specifically set forth later in this Complaint.

### F. NEGLIGENCE OF JUSTIN ANTHONG CHONG

30. The incident complained of herein and the resulting death of Stephen Bertram were proximately caused by the negligence of **JUSTIN ANTHONY CHONG**, including but not limited to one or more of the following:

    a. Failure to observe safe driving precautions and procedures under all of the circumstances;

    b. Failure to observe, follow and obey safe driving procedures, regulations and requirements of a commercial vehicle driver ;

    c. Failure to maintain control of the tractor trailer;

    d. Operating said motor vehicle in a careless and negligent manner;

    e. Failure to exercise reasonable care under all the circumstances;

    f. Acting negligent *per se* by violating state and federal statutes and regulations, including, but not limited to, La. R.S. § 32:58 (careless operation of a motor vehicle) which was the legal causes of the crash;

    g. In failing to have the required knowledge and skills to operate a commercial motor vehicle including, but not limited to, 49 C.F.R.§383.10 and 49 C.F.R.§383.111 for the operation of a tractor trailer;

    h. Failure to properly maintain the tractor and trailer he was operating at the time of the crash;

    i. Failure to ensure that the trailer he was towing was properly loaded and the cargo secured; and

    j. Being incompetent and unfit to operate a commercial motor vehicle.

    k. In failing to properly and competently perform a pre-trip inspection.

### G. NEGLIGENCE OF EMPIRE NATIONAL, INC.

31. Defendant EMPIRE NATIONAL, INC.was careless and negligent in:

    a. Failure to properly train Defendant Chong on the manner in which he should

        have safely and properly maintained control of tractor trailer;

b.     Failure to have proper policies and procedures in place for training its drivers on how they should maintain control of their truck in the event of a tire failure or blow out;

c.     Failure to have policies and procedures in place to ensure that its drivers could safely operate tractors;

d.     Failure to ensure that Defendant Chong observed safe driving precautions and procedures;

e.     Failure to ensure that the trailer Chong was towing was properly loaded and the cargo was secured;

f.     Permitting Defendant Chong to operate a motor vehicle despite violating numerous state and federal statutes and regulations, including La. R.S. § 32:58 (careless operation of a motor vehicle), which were the legal causes of the crash;

g.     Hiring a driver who it knew or should have known was incompetent and unfit;

h.     Negligently hiring, supervising and retaining Defendant Chong to drive tractor-trailers including the tractor and trailer involved in the subject crash;

i.     Knowing or should have known that Chong had an unsafe history of motor vehicle violations/and criminal violations including, but not limited to:

    1)     Possession of controlled dangerous substance and drug paraphernalia in February of 2009;

    2)     DUI, property damage and speeding violation June of 2018;

    3)     Speeding violation in August of 2012;

    4)     Expired tag in July 2010;

    5)     Expired tag in June of 2011;

    6)     Failure to display registration August 2012

    7)     Speeding violation in April 2014;

    8)     Improper equipment/speedometer in December 2014;

    9)     Vehicle crash in August 2015;

10) Speeding violation in August 2015;

11) Speeding violation in November of 2015;

12) Operating a commercial motor vehicle without a valid commercial driver's license in August of 2018;

13) Illegally operating an overweight commercial motor vehicle in August 2018;

14) Speeding violation in December of 2018;

15) Illegally operating an overweight commercial motor vehicle in June of 2019;

16) Operating a commercial motor vehicle without proof of periodic inspection (tractor annual inspection expired) in July of 2019;

17) Operating a commercial motor vehicle with a flat tire and/or audible leak in July of 2019;

18) Operating a commercial motor vehicle with improper securement of cargo and no securement devices used on jumbo paper rolls in July of 2019;

19) Operating a commercial motor vehicle with inoperable right and left middle side marker lamps on a trailer in July of 2019;

20) Operating a commercial motor vehicle with inoperable right and left rear tail lamps on a trailer in July of 2019;

21) Operating a commercial motor vehicle with a trailer that had frame cracks in July of 2019;

22) Operating a commercial motor vehicle with a clamp or roto brake out of adjustment in July of 2019;

23) Operating a commercial motor vehicle with an airbrake adjustment system that failed to compensate for wear in July of 2019; and

24) Operating a commercial motor vehicle with improper driver logs in July of 2019.

## H. GROSS NEGLIGENCE OF MALLORY INTERNATIONAL, INC.

32. The incident complained of herein and the resulting death of Stephen Bertram were proximately caused by the gross negligence of **MALLORY INTERNATIONAL, INC.** in breaching its duty to properly secure the load. **MALLORY INTERNATIONAL, INC.** knew that it grossly deviated from the standard of care outlined in the Federal Motor Carrier Safety Regulations, specifically 49 C.F.R. §393.122, by failing to utilize *any* of the industry standard and legally required methods of securing Less than a Truckload of paper rolls. **MALLORY INTERNATIONAL, INC.** also recklessly endangered the lives of the motoring public, including Stephen Bertram, when it improperly loaded paper rolls into a trailer that had obvious damage which should have been detected during the loading process. The damage to the trailer, a cracked left lower rail, resulted in clear sagging to the trailer which constituted an Out of Service violation.

33. **MALLORY INTERNATIONAL, INC.** knew or should have known that improperly loaded paper rolls can shift upon or within the trailer to such an extent that the tractor trailer's stability or maneuverability is adversely impacted.

34. **MALLORY INTERNATIONAL, INC.** knew or should have known that steer tire blowouts are a common occurrence even amongst properly qualified motor carriers.

35. **MALLORY INTERNATIONAL, INC.** knew or should have known that in the event of a steer tire blowout even a competent professional driver acting prudently under the circumstances would be unable to control an improperly loaded trailer of paper rolls.

36. Alternatively, **MALLORY INTERNATIONAL, INC.** knew when the freight on a truck is not correctly loaded there is an increased chance of tire failure. As a result of the improperly loaded freight, the truck tire at issue failed causing a loss of control of the vehicle and the resulting

crash.

37.  The collective acts of gross negligence of **MALLORY INTERNATIONAL, INC.** were a proximate cause of Stephen Bertram's untimely and wrongful death and suffering, and of the wrongful death damage asserted by ) LAUREN BERTRAM, a person of the full age of majority of Calcasieu Parish, Louisiana, individually and on behalf of her Minor Child, CHRISTOPHER BERTRAM, (2) JULIAN BERTRAM and (3) ALEXANDER BERTRAM. Thus, the conduct of **MALLORY INTERNATIONAL, INC.** entitles Petitioners to recover exemplary damages against **MALLORY INTERNATIONAL, INC.**, in addition to their actual damages.

38.  The harm with respect to which Plaintiffs seek to recover for exemplary damages was the direct result of **MALLORY INTERNATIONAL, INC.**'s gross negligence. The acts and omissions of **MALLORY INTERNATIONAL, INC.** involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. **MALLORY INTERNATIONAL, INC.** had actual subjective awareness of the risks involved, yet proceeded in such an entire want of care as could have resulted only from the conscious indifference of the rights and safety or welfare of others.

39.  Accordingly, Plaintiffs hereby sue for exemplary damages, in an amount to be determined by the trier of fact, and said amount to be sufficient to punish and deter **MALLORY INTERNATIONAL, INC.** and others like them from such conduct in the future.

40.  Louisiana Code Article 3546 allows punitive or exemplary damages to be assessed against **MALLORY INTERNATIONAL, INC.** because both the law of the state (Texas) where the injurious conduct occurred and the law of the place where **MALLORY INTERNATIONAL, INC.** is domiciled (Tennessee) allow for the recovery of such damage.

### I. NEGLIGENCE OF CONVERMAT

41.     **CONVERMAT** was negligent in hiring **MALLORY INTERNATIONAL, INC.** to provide freight-forwarding and brokerage services. **CONVERMAT** knew or should have known that **MALLORY INTERNATIONAL, INC.** a reckless and/or incompetent freight forwarder. Further, **CONVERMAT** is liable for the negligent conduct of its agent, **MALLORY INTERNATIONAL, INC.,** as the improper loading of the trailer at issue was within the scope of the agency agreement.

### J.     NEGLIGENCE OF BLUE GRACE

42.     The **BLUE GRACE GROUP, LLC** was negligent in investigating **EMPIRE NATIONAL, INC.**'s competence to transport goods in a commercial motor vehicle on the public roadways and selecting and hiring **EMPIRE NATIONAL, INC.** to transport goods from Laredo, Texas to Hickory, North Carolina in a commercial motor vehicle on the public roadways. The broker knew or should have known that **EMPIRE NATIONAL, INC.** was reckless and incompetent to transport goods in a commercial motor vehicle on the public roadways. The broker failed to exercise ordinary care in investigating **EMPIRE NATIONAL, INC.'s** competence to transport goods in a commercial vehicle on the public roadways and selecting **EMPIRE NATIONAL, INC.** to transport goods in a commercial motor vehicle on the public roadways, because had the broker exercised ordinary care to investigate **EMPIRE NATIONAL, INC.**, it would have learned that **EMPIRE NATIONAL, INC.** was reckless and incompetent to transport goods in a commercial motor vehicle on the public roadways. Specifically, the broker would have learned, among other things, that **EMPIRE NATIONAL, INC.** was an unrated motor carrier, with safety statistics indicating unsafe operation, with a shoddy and dangerous motor vehicle driving record, with a history of Out of Service violations related to vehicle maintenance all indicating that

**EMPIRE NATIONAL, INC.** was reckless and incompetent to transport goods in a commercial motor vehicle on the public roadways. Plaintiffs were damaged as a result of **EMPIRE NATIONAL, INC.**'s incompetence, recklessness and negligence in operating the commercial motor vehicle in which **EMPIRE NATIONAL, INC.** was transporting **CONVERMAT**'s goods on the public roadway. The negligence of the broker was a proximate cause of the collision in which Stephen Bertram was killed.

### K.  DAMAGES

43. By reason of the carelessness and negligence of Defendants Progressive, Empire National, Chong, Convermat, Blue Grace, and/or Mallory Alexander, Plaintiffs sustained and make a claim for damages which include, but are not limited to, the following:

   a. Loss of love, affection, and companionship;

   b. Loss of support;

   c. Loss of services;

   d. Mental pain, suffering and distress;

   e. Medical expenses;

   f. Funeral expenses;

   g. Property damage and

   h. Any and all other damages to which they are entitled or may be entitled under Louisiana law.

44. Plaintiffs further assert a survival claim for the suffering and damages sustained by Stephen Bertram from the time of injury to the moment of his death.

45. Plaintiffs plead for trial by jury on all issues.

**WHEREFORE**, plaintiffs, LAUREN BERTRAM, CHRISTOPHER BERTRAM, JULIAN BERTRAM and ALEXANDER BERTRAM, pray that:

I. Defendants be duly cited to appear and answer this petition and they be served with a copy of this Third Amended and Restated Complaint;

II. There be judgment in favor of plaintiffs and against all Defendants for such damages as are reasonable in the premises together with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings and

III. For all orders and decrees necessary in the premises; and for full, general and equitable relief.

RESPECTFULLY SUBMITTED BY
BROUSSARD & WILLIAMSON,
*Attorneys for Plaintiffs*

*/s/Michael J. Williamson*
MICHAEL WILLIAMSON (#31004)
AARON BROUSSARD (#30134)
STEVEN BROUSSARD (#3518)
JASON R. BELL (#30860)
RACHEL K. COUVILLION (#33927)
JOHN MARK FEZIO (#29861)

**BROUSSARD + WILLIAMSON**

1301 Common Street
Lake Charles, LA   70601
(337) 439-2450  Telephone
(337) 439-3450  Facsimile

17

        AND

        */s/Jere Jay Bice*
        **JERE JAY BICE** (Bar Roll No. 18793)
        **MICHAEL G. HODGKINS** (Bar Roll No. 20862)
        **PEYTON F. PAWLICKI** (Bar Roll No. #37826)
        Veron, Bice, Palermo & Wilson, LLC
        721 Kirby Street
        P.O. Box 2125
        Lake Charles, LA 70602
        Telephone: (337) 310-1600
        Fax: (337) 310-1601

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a copy of the above and foregoing has been duly served on all counsel of record by:

| | | | |
|---|---|---|---|
| _____ | U.S. mail, postage pre-paid | _____ | Facsimile |
| _____ | FedEx, pre-paid | _____ | E-mail |
| _____ | Hand delivery | __X___ | Court's CM/ECF system |

on this 23rd day of April, 2021.

        */s/Emily Guillotte*
        Emily Guillotte
        Paralegal to MICHAEL J. WILLIAMSON