# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | |
|---|---|
| **LAUREN BERTRAM, ET AL.** | **CIVIL ACTION NO. 2:19-cv-01478** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **PROGRESSIVE SOUTHEASTERN INSURANCE COMPANY, ET AL.** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is Defendant Northfield Insurance Company's ("Northfield")
Motion for Summary Judgment, wherein it moves to dismiss claims against it, with
prejudice. Doc. 202. Plaintiffs oppose the motion. Doc. 213. Defendant Convermat Corp.
("Convermat") also opposes the motion. Doc. 231. Northfield has replied. Doc. 232.

## I. BACKGROUND

This lawsuit arises from a vehicle accident that occurred on July 16, 2019, on
Interstate 10 westbound near Vinton, Louisiana, where an eastbound tractor-trailer carrying
paper towels lost control after a blowout, crossed into oncoming traffic in the westbound
lanes striking a passenger vehicle.[1] The Freightliner Cascadia 125 tractor towing a 2017
Great Dane trailer was loaded with paper towels in Laredo, Texas by Mallory Alexander
International Logistics, Inc. ("Mallory), which was hired by Convermat to ship the paper
towels.[2] To transport the paper towels to North Carolina, Convermat retained Blue Grace
Logistics, LLC, a carrier broker, who coordinated with Defendant Empire National, Inc.

---

[1] Doc. 1, p. 9.
[2] *Id.* at 2–6, 8.

("Empire National") for the transport. Empire National employed Justin Chong to transport paper rolls from Laredo, Texas to Hickory, North Carolina.[3]

Mr. Chong was travelling eastbound on Interstate 10 approximately four miles east of Vinton when his tractor experienced a blow-out of the front driver's side tire.[4] Defendant Chong lost control of the tractor-trailer and travelled north of the Interstate 10 eastbound lanes through the grassy median and into the Interstate 10 westbound lanes with oncoming traffic.[5] Defendant Chong's tractor-trailer collided with a 2011 Chevrolet Traverse operated by Stephen Bertram in Interstate 10 westbound middle lane.[6] Mr. Bertram died at the scene.[7]

On October 7, 2019, Plaintiffs brought suit for damages against Progressive Southeastern Insurance Company, Empire National, Riverside Transport, Inc., and Justin Chong in the 14th Judicial District Court, Parish of Calcasieu, Louisiana.[8] On November 14, 2019, the case was removed to this Court.[9] On January 17, 2020, Riverside Transport, Inc. was dismissed from the case.[10] On March 23, 2020, Plaintiffs added Defendants Convermat Corporation, Blue-Grace Logistics, LLC, and Mallory Alexander.[11] On January 12, 2023, Blue Grace was dismissed.[12] On January 12, 2023, Defendants TT Club Mutual Insurance Limited, First Mercury Insurance Company ("First Mercury"), and Northfield

---

[3] *Id.* at 6.
[4] *Id.* at 9.
[5] *Id.* at 9–10.
[6] *Id.* at 10.
[7] *Id.*
[8] Doc. 1-2.
[9] Doc. 1.
[10] Doc. 12.
[11] Doc. 44.
[12] Doc. 171.

were added.[13] On January 20, 2023, TT Club Mutual Insurance Ltd was dismissed.[14] On March 21, 2023, the Court dismissed Plaintiffs' negligent hiring claims against Convermat.[15] On April 14, 2023, Defendants Progressive Southeastern Insurance Company, Empire National, and Justin Chong were dismissed from the case. On July 14, 2023, the Court dismissed Plaintiffs' claims against Mallory and First Mercury for exemplary and punitive damages.[16] On July 20, 2023, the Court granted partial summary judgment dismissing claims for post-impact survival damages.[17] Plaintiffs have settled their claims against all parties except for Convermat, Mallory, and their respective insurers. Jury trial is set for September 18, 2023.

## II.  LEGAL STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."

---

[13] Doc. 169.
[14] Doc. 175.
[15] Doc. 194.
[16] Doc. 216.
[17] Doc. 224.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). The Court is not required to search the record for material fact issues. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III. LAW AND ANALYSIS

General laws of contract interpretation control in both New York and Louisiana, and because there is no conflict between the two states' laws governing the interpretation of insurance policies, the Court will apply the law of the forum state, Louisiana. *See Schneider Nat. Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) (applying law of forum state, Texas, where Texas's and Pennsylvania's laws did not conflict). An insurance policy is an aleatory, nominate contract between the parties, and is subject to the rules of contract interpretation pursuant to the Louisiana Civil Code. La. Civ. Code arts.

1912, 1914; *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994); *Broadmoor Anderson v. National Union Fire Ins. Co. of Louisiana*, 912 So.2d 400, 404 (La. Ct. App. 2d Cir. 2005), *writ denied*, 912 So.2d 400 (La. 2005). When interpreting an insurance policy, courts must determine the common intent of the parties. *See* La. Civ. Code art. 2045. The words of the insurance policy must be given their generally prevailing meaning whereas technical words must be given their technical meaning. *See id.* art. 2047. When the words of an insurance policy are clear and explicit and lead to no absurd consequences, courts must enforce the policy as written. *See id.* art. 2046. Any ambiguity is resolved by interpreting against the party which furnished the text, here, the insurer. *See id.* art. 2056.

## A. Northfield's Policy Limitations and Exclusions

Northfield moves to dismiss Plaintiffs' claims against it and advances three separate arguments: (1) the Premises Operations Coverage Limitation precludes coverage as a matter of law; (2) the Auto Exclusion bars coverage for Plaintiffs' claims as a matter of law; and (3) the Independent Contractor Exclusion bars coverage as a matter of law.

### 1. Premises Operations Coverage Limitation

Convermat's CGL Policy contains the following Premises Operations Coverage Limitation to Coverage A:

b. This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

1.     The "bodily injury" or "property damage":

(a) Occurs on the premises shown in the schedule or the grounds or structures appurtenant to those premises; or

(b) Arises out of the project or operation shown in the Schedule;

. . . .[18]

Northfield argues that Convermat's CGL Policy's Premises Operations Limitation Endorsement to Coverage A limits liability to only those occurrences that take place on the two premises identified in the CGL Policy's Declarations, making the Policy a premises-only policy. Furthermore, Northfield claims that this limitation precludes coverage for any project or operation because no project or operation is identified on the Premises Operations Limitation Endorsement or the CGL Policy Declarations. On the other hand, Plaintiffs and Convermat argue that Coverage A is not limited to premises-only because the Premises Operations Coverage Limitation Endorsement contains the following language: "Information required to complete this Schedule, if not shown above, will be shown in the Declarations."[19] From this, Plaintiffs and Convermat argue that the Common Policy Declarations and the CGL Declarations indicate a clear intent to define the term "operations" as all of Convermat's operations within the United States.

Though the Premises Operations Coverage Limitation Endorsement limits Coverage A to damages or injuries that occur only at the specific premises or arising out of the project or operation identified in that Endorsement, that Endorsement's Schedule neither identifies any specific premises (locations) nor operations to which Coverage A is limited. Instead, the Schedule's Premises Section incorporates by reference all covered locations as listed on the CGL Policy's Declarations page. That Declarations page

---

[18] Doc. 202-6, p. 80.
[19] *Id.*

identifies only two premises: 111 Great Neck Rd., Ste 514, Great Neck, NY, and 9401 Wilshire Blvd, Suite 575, Beverly Hills, CA. A similar incorporation by reference does not exist in the Projects or Operations Section of the Schedule on the Premises Operations Coverage Limitation Endorsement; it is left blank.

### 2. *Classification Limitation Endorsement*

The lack of information on the Premises Operations Coverage Limitation Endorsement as to the scope of Coverage A pertaining to Projects or Operations is made clearer by a different endorsement that applies to Coverage A, the Classification Limitation Endorsement. It states: "This insurance applies to 'bodily injury' and 'property damage' caused by only those operations which are classified and shown on the Commercial General Liability Coverage Declarations, its endorsements, and supplements."[20] Thus, according to the Classification Limitation Endorsement, coverage for off-premises operations extends only to operations specifically appearing on the face of the CGL Policy's Declarations page. And since no operation is shown and classified as required by the Classification Limitation Endorsement, coverage cannot extend to any operation. Though no operation is classified and shown on the CGL Policy's Declarations, two-line items are classified and shown. They pertain to the buildings or premises for the 111 Great Neck Rd and 9401 Wilshire Blvd locations. Moreover, each provides the same description: "Buildings or Premises — office-premises occupied by employees of the insured — For Profit. — Products-completed operations are subject to General Aggregate Limit." An

---

[20] Doc. 202-6, p. 45.

analogous and persuasive but unpublished case, *First Specialty Ins. Corp. v. Mississippi State Univ.*, 355 F. App'x 815 (5th Cir. 2009), involved a similar policy classification limitation endorsement. There, the court found that the CGL policy was limited to premises-only when it made no mention of off-premises coverage in the declarations or classification limitation endorsement. *Id.*; *see also First Specialty Ins. Corp. v. U.S. Aquaculture Licensing*, No. 1:07CV98-SA, 2008 WL 5191668, at *4 (N.D. Miss. Dec. 10, 2008), *aff'd sub nom. First Specialty Ins. Corp. v. Mississippi State Univ.*, 355 F. App'x 815 (5th Cir. 2009). The Fifth Circuit stated that the policy "made clear beyond dispute that the policy was limited to premises liability." *First Specialty*, 355 F. App'x at 816. Specifically, the policy classification limitation endorsement in *First Specialty* included the following language: "The policy excludes coverage for any operation not specifically listed in the coverage part, schedule or Declarations page of this policy." By comparison, Convermat's CGL Policy is without similar language that eliminates any uncertainty over operations related coverage.

In all, Convermat's CGL Policy's Premises Operations Coverage Limitation Endorsement's phrase "Arises out of the project or operation shown in the Schedule" is ambiguous as to whether the absence of an operation on the Schedule and CGL Declarations page means that there is no coverage for any off-premises operation or that the same absence means there is coverage for all off-premises operations. In other words, on one hand, a specific operation must be named for Coverage A to come into effect and provide coverage for any liability arising out of an operation, while on the other, Coverage A exists *ab initio* for any liability arising out of all operations, and a specific operation is

required to be listed in Policy to limit Coverage A to only certain operations. In addition to this ambiguity, the Policy's Classification Limitation Endorsement is vague as to whether it means the Policy is a premises-only policy. Any vagueness or ambiguity cannot be construed against coverage. *See id.* art. 2056. Consequently, Convermat's CGL Policy's Coverage A insures Convermat against liability occurring on-premises at the two identified locations on the CGL Policy's Declarations page as well as off-premises arising out of any project or operation within the coverage territory, *i.e.*, the United States. This part of the motion is denied.

### 3. *The Auto Exclusion*

Convermat's CGL Policy contains the following Aircraft, Auto or Watercraft Exclusion Endorsement, which states that the CGL Policy does not apply to:

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" **arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured, an agent of any insured, or an independent contractor providing services for or on behalf of any insured**. Use includes operation and "loading and unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use of entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured, an agent of any insured, or an independent contractor providing services for or on behalf of any insured.[21]

---

[21] Doc. 202-6, p. 61 (emphasis added).

Northfield argues that the Auto Exclusion unambiguously precludes coverage for Plaintiffs' claim because their complaint asserts claims arising out of a July 16, 2019 automobile collision. Plaintiffs argue that the allegedly breached duty by Convermat does not flow from the use of an automobile, and that duty was contractual and completely independent from the use of an auto. Plaintiffs offer *LeJeune v. Allstate Ins. Co.*, 365 So.2d 471 (La. 1978), as support. There, the Louisiana Supreme Court stated:

> An exclusion clause in a liability policy is strictly construed against the insurer and in favor of coverage, if more than one interpretation is possible. Consonant with this principle, the decisions we could find hold that, where the automobile use exclusion clause is sought to be applied so as to avoid coverage for injuries otherwise covered by a general liability policy, the exclusion clause does not apply where the insured's act is a result of negligence independent of, even though concurring with, his use of an automobile . . . .

*Id.* at 479 (collecting cases).

Here, Plaintiffs do not allege negligent acts in the use of an automobile by Convermat or negligent loading and unloading by Convermat, but rather, allege Convermat breached its contractual duties to Mallory under the Warehousing Agreement or impliedly authorized unsafe work practice of Mallory as an independent contractor. Additionally, neither Convermat nor Mallory owned, operated, rented, or loaned the Freightliner Cascadia 125 tractor towing a 2017 Great Dane trailer that allegedly struck Mr. Bertram's vehicle. Thus, Convermat's alleged failure to instruct Mallory is negligence outside the scope of the Policy's Auto Exclusion. This part of the motion will be denied.

#### 4.  *The Policy's Independent Contractor Exclusion*

Northfield argues that the CGL Policy's Independent Contractor Exclusion precludes coverage because Convermat retained Blue Grace, a motor carrier broker to arrange the transportation of the paper rolls, and Mr. Chong is an independent contractor. The CGL Policy's Independent Contractor Exclusion Endorsement excludes the following from Coverage A: "'Bodily injury' or 'property damage' arising out of the operations of any independent contractor performed for or on behalf of any insured."[22] Northfield claims that a plain reading interpretation of this exclusion obtains that the negligence of Mr. Chong, who is an independent contractor of Empire National, triggers Convermat's CGL Policy's Independent Contractor Exclusion to Coverage A notwithstanding the absence of an independent contractor relationship between Mr. Chong and Convermat. However, the plain language of the CGL Policy's Independent Contractor Exclusion indicates that operations by an independent contractor must be "performed for or on behalf of" Convermat. Here, Northfield has not provided sufficient summary judgment evidence to establish Mr. Chong was Convermat's independent contractor. Thus, issues of material fact remain as to whether the relationship between Convermat and Mr. Chong is sufficient to trigger the Independent Contractor Exclusion.

Additionally, Northfield argues that this exclusion bars coverage if the factfinder determines that Mallory was an independent contractor of Convermat. Plaintiffs respond arguing that their allegations against Convermat do not arise out of an independent

---

[22] Doc. 202-6, p. 51.

contractor's operations but arise from Convermat's independent act/omissions. Also in opposition to the instant motion, Convermat argues that the Court's January 25, 2023 Memorandum Ruling found that issues of material fact remain as to whether Convermat and Mallory's relationship was that of an independent contractor despite the presence of an independent contractor provision in the Warehousing Agreement.[23] In sum, issues of material fact remain as to whether Mallory or Mr. Chong was acting on behalf of or for Convermat as an independent contractor. This part of the motion will be denied.

## IV. CONCLUSION

For the reasons stated herein,

**IT IS ORDERED** that Defendant Northfield's Motion for Summary Judgment (Doc. 202) is **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 10th day of August 2023.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[23] Doc. 178.